## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **KELLY ALLEN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **5:05-CV-36 (DF)** |
| | : | |
| **GEORGIA DEPARTMENT OF** | : | |
| **HUMAN RESOURCES, SYLVESTER** | : | |
| **KNOWLTON and PAM MASON, in** | : | |
| **their individual capacities, and JOHN** | : | |
| **DOE, in his individual capacity,** | : | |
| | : | |
| **Defendants.** | : | |

_____

# O R D E R

Plaintiff Kelly Allen initiated this civil rights action against his former employer, Defendant Georgia Department of Human Resources, two of his former colleagues, Defendants Sylvester Knowlton and Pam Mason (in their individual capacities), and one unidentified male, Defendant John Doe (in his individual capacity), in the Superior Court of Baldwin County, Georgia, in January 2005.  In addition to setting forth an invasion-of-privacy tort claim arising under Georgia law, Allen alleges in his complaint that Knowlton and Mason, by terminating his employment following a positive test for illegal drug use, deprived him of his reputational liberty interest without due process of law, in violation of the Fourteenth Amendment.  Specifically, Allen alleges that his reputation was damaged

when he was "terminated without having been given a meaningful opportunity to clear [his] name."  (Compl. ¶ 10.)

Under the authority of 28 U.S.C.A. §§ 1441 & 1446, Defendants removed the case to this Court in February 2005, invoking jurisdiction under 28 U.S.C.A. § 1331.  Defendants have moved for summary judgment (doc. 12) on both of Allen's claims.  The Court has given careful consideration to the record before it, the parties' briefs, and the applicable law.  For the reasons stated below, the Court grants Knowlton and Mason summary judgment on Allen's Fourteenth Amendment claim and remands the invasion-of-privacy tort claim to the Superior Court of Baldwin County.[1]

## I.  BACKGROUND

Plaintiff Kelly Allen began working at Central State Hospital in Milledgeville, Georgia, as a health services technician on December 12, 2002.  Central State is a unit of Defendant Georgia Department of Human Resources (Department).  Allen was an at-will employee and was supervised by Sylvester Knowlton, the hospital's Service Director.  Pam Mason worked at Central State as the Department's Regional Facilities Human Resources Director.

While being interviewed for the job by Knowlton on December 11, 2002, Allen was

---

[1] The John Doe defendant is hereby dismissed because no claim against him is alleged in Allen's complaint, he has never been identified by Allen (and is nowhere mentioned in Allen's brief in opposition to Defendants' summary-judgment motion), and he has not been served with process in accordance with Federal Rule of Civil Procedure 4.

informed that he, like all Department employees, would be subject to drug testing as a condition of employment.  The Department required that Allen be tested for drugs before he could begin work and thereafter, at random intervals, throughout the remainder of his employment.  According to Department policy, employees who test positive for drug use are immediately terminated.

The Department administered Allen's pre-employment drug test on the premises of Central State immediately following his interview with Knowlton.  The urine sample taken from Allen at that time was sent away for testing, but was rejected for reasons, according to Allen, having to do with the way in which the sample was handled at the laboratory.  Allen was informed of the rejection in a letter from the Department and was instructed to "immediately report" for re-testing.  He was further "advised that if . . . [his] test indicates the presence of an illegal drug[] . . . [he] will be immediately separated from employment with the Department of Human Resources."  (Defs.' Ex. 4 to Allen Dep., doc. 16.)

Allen was re-tested at Central State sometime after his job started.  This time his urine sample tested positive for the presence of marijuana.  He was told by a woman at Central State that he would be terminated based on the positive result, and he later received in the mail a letter drafted by the Office of Human Resources saying the same thing.  According to the letter, Allen's termination was effective as of January 2, 2003.

The same day he was informed of the positive test result, Allen went to a private clinic

and had an independent drug test conducted. The results of that test came back negative for the presence of any illegal drugs.  A period of "a couple of weeks" had passed between the administration of the second test at Central State and the administration of the independent test Allen had performed at the private clinic.

At some point after finding out that the private test came back negative, Allen ran into Knowlton in public, outside of the hospital setting, and informed him that he had tested negative for drugs.  Knowlton's only response was to tell Allen to "get an attorney."  (*Id.* at 26.)  Apart from this encounter with Knowlton, Allen never communicated with anyone at Central State, either orally or in writing, about the test results of his independent screening. From the time he spoke to Knowlton in 2003 until the time he filed this lawsuit in 2005, Allen pursued no remedies for what he alleges was the "severe emotional distress and suffering" caused by having been terminated for a positive drug test.  Allen took no steps to challenge his termination, to have his name cleared, or to have his grievance against Central State heard.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also **Celotex Corp. v. Catrett***, 477 U.S. 317,

322 (1986).  A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).  The Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but may not make credibility determinations or weigh the evidence.  ***Id.*** at 249.  Finally, "the evidence presented cannot consist of conclusory allegations or legal conclusions." ***Avirgan v. Hull***, 932 F.2d 1572, 1577 (11th Cir. 1991).

### III.  DISCUSSION

**A.     The Due Process Clause of the Fourteenth Amendment**

Invoking his reputational liberty interest in his good name, Allen has alleged in his complaint a procedural due process claim against Knowlton and Mason based on his assertion that he was given "no meaningful opportunity to clear [his] name." (Compl. ¶ 10.) That is the only federal claim Allen alleges in his complaint.  Nevertheless, in his brief in opposition to Knowlton and Mason's motion for summary judgment, Allen for the first time in this case argues that those defendants, by placing the positive test results in his personnel file, deprived him of a privacy interest protected by the substantive sphere of the Fourteenth Amendment's Due Process Clause.

Because Allen never moved to amend the pleadings to state such a claim—either before or after the close of discovery—and because a non-moving plaintiff may not raise a

new legal claim for the first time in an opposition brief submitted at the summary-judgment stage of the proceedings, *see Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1313 (11th Cir. 2004), the Court rejects without further comment any substantive due process claim Allen may be attempting to assert.

The Court turns now to the procedural due process claim alleged in Allen's complaint. Allen alleges that his reputation was maligned when defendants caused the positive result of his drug screening (which he claims is false) to be placed in his personnel file (which he claims is subject to public inspection under Georgia law) and because he is now "compelled to tell prospective employers that he was terminated . . . due to a positive drug screening." (Compl. ¶ 11.)

"[W]hen reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983." *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000). To prevail on a procedural due process claim founded on the deprivation of one's reputational liberty interest, a plaintiff must demonstrate that: "(1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4) [was] made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing." *Id.* (citations omitted). "Because [the name clearing hearing] is provided simply to cleanse the reputation of the claimant, the hearing need not

take place prior to his termination or to the publication of related information adverse to his interests." ***Buxton v. City of Plant City, Fla.***, 871 F.2d 1037, 1047 (11th Cir. 1989) (citations omitted).

At issue in this case is the sixth element, which, according to Knowlton and Mason, Allen cannot satisfy.  Relying on the Eleventh Circuit's holding in ***Cotton***—that a plaintiff "fail[s] to state a procedural due process claim [for reputational injury] . . . [where] state remedies [are] available to provide Plaintiff with the opportunity for a name clearing hearing," 216 F.3d at 1330—Knowlton and Mason argue that they are entitled to summary judgment on Allen's procedural due process claim because adequate remedies were available to him under Georgia law and that, as a result, he cannot demonstrate that he was "without a meaningful opportunity for an employee name clearing hearing."  The Court agrees that ***Cotton*** is controlling and finds that Allen has not stated a procedural due process claim.

In ***Cotton***, the plaintiff, an employee of the State of Georgia, was terminated from his position as college administrator after being accused of sexual harassment by two employees of the college where he worked.  216 F.3d at 1329.  After receiving the sexual-harassment complaints, the college president suspended the plaintiff with pay until an investigation into the accusations could be resolved.  ***Id.***  The plaintiff gave sworn responses to the personnel director charged with overseeing the investigation.  ***Id.***

Once the investigation concluded, the college president wrote a letter to the plaintiff

informing him that his employment was going to be terminated.  *Id.*  The plaintiff requested a hearing before the effective date of his termination, but the president denied his request. *Id.*  The plaintiff then sought discretionary review of the termination decision from the Board of Regents; that request was also denied.  *Id.* at 1330.  Without pursuing any further remedies, the plaintiff filed suit against the college president (and others) in federal court, alleging, among other things, a procedural due process claim under § 1983 for injury to his reputation caused by the sexual-harassment allegations and the college's failure to provide him a meaningful opportunity to clear his name.  *Id.*

Arguing that he was entitled to qualified immunity, the college president filed a motion for summary judgment, which the district court denied.  On interlocutory review of that denial, the Eleventh Circuit reversed the district court, holding that the plaintiff failed to state a procedural due process claim because, under Georgia law, he had a constitutionally adequate remedy (a writ of mandamus) for his alleged injury, which he failed to pursue and which by its very existence foreclosed as a matter of law the possibility of a Fourteenth Amendment claim for deprivation of procedural due process.  *Id.* at 1333.

The Eleventh Circuit stated in ***Cotton:***

Assuming a plaintiff has shown a deprivation of some right protected by the due process clause [in this case, a reputational liberty interest], we—when determining if a plaintiff has stated a valid procedural due process claim—look to whether the available state procedures were adequate to correct the alleged procedural deficiencies.  If adequate state remedies were available but the

plaintiff failed to take advantage of them, the plaintiff cannot rely on that
failure to claim that the state deprived him of procedural due process.

216 F.3d at 1331 (alteration added; citations omitted).  The court in **Cotton** examined two

remedies under Georgia law to determine if either was available to the plaintiff and, if so,

whether either one would have been adequate to correct the alleged procedural deficiency.

First, the court considered whether certiorari to the state courts—legal recourse

which the court noted is "generally an adequate state remedy" in the context of employment

termination decisions—was available to the plaintiff, given the fact that certiorari under

Georgia law lies only "to correct the errors committed 'by any inferior judicatory or any

person exercising judicial powers.'"  **Id.** at 1332 (citing O.C.G.A. § 5-4-1(a)).  The court

concluded that certiorari was not available to the plaintiff because the nature of the acts he

was challenging—those of the college president and the state Board of Regents—were not

judicial or quasi-judicial under state law.  **Id.**  For the same reasons cited by the court in

**Cotton**, certiorari to the state courts was not available to Allen under the circumstances of

this case because the decision to terminate his employment from Central State was not a

judicial or quasi-judicial act.

Second, having rejected certiorari as an available remedy, and going on to assume that

the plaintiff had no other state-law remedies available to him, the court in **Cotton** considered

whether the plaintiff would have been entitled to seek a writ of mandamus in state court.[2]

216 F.3d at 1332.  Recognizing that "mandamus will not normally issue to compel the

performance of a discretionary act," the court in *Cotton* noted that "it is [an] available

[remedy] when an official abuses his discretion" by making "a clear error of judgment" or

by "appl[ying] an incorrect legal standard." *Id.*

> The court then stated:

> If Plaintiff were without another legal remedy and proved in a state mandamus
> proceeding that Defendants had deprived Plaintiff of his federal liberty interest
> in his reputation without a hearing, then Plaintiff would have shown that he had
> a clear legal right to a name-clearing hearing.  Therefore, Plaintiff would have
> been entitled to an order of mandamus directing Defendants to hold a name-
> clearing hearing (assuming that the mandamus proceeding was not itself a
> sufficient name-clearing hearing to satisfy due process).

*Id.* at 1333 (citations omitted).

The court in *Cotton* determined that a mandamus proceeding would be adequate

to ensure that the plaintiff's procedural due process rights were not deprived and thus

concluded that the plaintiff could not state a procedural due process claim under the

Fourteenth Amendment because he "failed to show that inadequate state remedies were

available to him to remedy any alleged procedural deprivations." *Id.*

In this case, assuming, without deciding, that Allen is without any specific legal

---

[2] "The writ of mandamus is an extraordinary remedy that is available only when the petitioner has
a clear legal right to the relief sought and *there is no other adequate legal remedy*." ***Rankowitz v. Smith***,
471 S.E.2d 853, 853 (Ga. 1996) (emphasis added).

remedies under Georgia law,[3] the Court determines that Allen would be entitled to initiate a mandamus proceeding for the purpose of seeking the name-clearing hearing he desires. Accordingly, Allen is unable to satisfy the sixth element of a procedural due process claim for injury to his reputational liberty interest—that the state has denied him "a meaningful opportunity [for a] name-clearing hearing" *id.* at 1330—and Knowlton and Mason are therefore entitled to judgment as a matter of law on that claim.

## B.    The State-Law Claim for Invasion of Privacy

In addition to his procedural due process claim under the Fourteenth Amendment, Allen alleges a state-law tort claim in his complaint: namely, that "Defendants' failure to give Plaintiff and [sic] opportunity to clear Plaintiff's name, caused Plaintiff to be presented in a false light and thereby invaded Plaintiff's privacy." (Compl. ¶ 14.)  The Court's jurisdiction over this claim is supplemental, not original.  *See* 28 U.S.C.A. § 1367(a) (West 2006).  Where, as here, the Court has dismissed the sole claim over which it has original jurisdiction, it may, in its discretion, remand to state court any remaining pendent state-law claims.  *See* 28 U.S.C.A. § 1367(c)(3); *see also* ***Engelhardt v. Paul Revere Life Ins. Co.***, 139 F.3d 1346, 1350 (11th Cir. 1998) (recognizing district court's discretion to remand state-

---

[3] Even if Allen does have other, non-mandamus state law remedies available to him, the Court's conclusion that he has failed to state a claim under the Fourteenth Amendment would not change.  If such remedies are available and are adequate to protect his right to have a name-clearing hearing held, then a procedural due process claim would be foreclosed.  If such remedies are available but inadequate to protect his right to a name-clearing hearing, he would be entitled to seek a writ of mandamus, thus precluding a procedural due process claim.  *See Cotton*, 216 F.3d at 1332 n.3.

law claims under § 1367(c)).  That is what the Court will do in this case because remanding the pendent state-law claim will further the principles of judicial economy and comity.  *See In re City of Mobile*, 75 F.3d 605, 607 (11th Cir. 1996).  Accordingly, Allen's state-law tort claim is hereby remanded to the Superior Court of Baldwin County, Georgia.

## V.  CONCLUSION

For the reasons stated above, Knowlton and Mason's  motion for summary judgment (doc. 12) is hereby **GRANTED** with respect to Allen's procedural due process claim, and Allen's state-law tort claim is hereby **REMANDED** to the Superior Court of Baldwin County, Georgia.


SO ORDERED, this 8th day of August, 2006.


**/s/ Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/sew